UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

SANDRA L. VANDER MEULEN,

    Plaintiff,

    v.                                      Case No. 09-C-0560

MICHAEL J. ASTRUE,

    Defendant.

DECISION AND ORDER REVERSING DECISION OF THE
ADMINISTRATIVE LAW JUDGE AND REMANDING CASE TO THE COMMISSIONER

    Sandra L. Vander Meulen filed several applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Her applications were denied initially and upon reconsideration. Administrative Law Judges ("ALJ") have issued decisions denying her benefits on three separate occasions. The Appeals Council vacated and remanded two of the decisions. Later, the Appeals Council denied Vander Meulen's request for review of the third decision and it became the final decision of the Commissioner.

    In Vander Meulen's appeal to this court, she asserts that the ALJ made an erroneous Residual Functional Capacity ("RFC") finding based on improper assumptions, weighed the evidence improperly, relied on his personal medical opinions, and made improper credibility and Step Four findings. Vander Meulen seeks judicial review. In accordance with the following discussion, the decision is reversed and remanded.

STATEMENT OF FACTS

    Sandra L. Vander Meulen was 45 years old on her original alleged disability onset date of August 1, 1997, she was 55 years old when she appeared at the last remand

hearing in 2007 (Tr. 170), and was 60 years old when the ALJ issued the decision at issue in this case. She graduated from high school and was employed in the fast food industry for at least 15 years. (Tr. 864-866.) Since Vander Meulen started working at Burger King, she has not worked elsewhere. *Id.*

Vander Meulen filed for benefits in 1993, 1996, 1998, and 1999, all of which were denied initially and not pursued further. She filed for benefits again on November 5, 1999 and April 14, 2000. Generally, Vander Meulen's disability claims asserted degenerative arthritis, various musculoskeletal complaints, and later seizure disorder. After her applications were denied initially and upon reconsideration (Tr. 581-98), Vander Meulen timely requested a hearing. Vander Meulen appeared with counsel on December 18, 2001, and testified before ALJ Robert L. Bartlet, Jr.

At the hearing, Vander Meulen stated that when she started working at Burger King in 1985, "I was able to do everything there." (Tr. 785-86.) During her time there, she performed many duties, including: cashier; assistant cook; cleaning; taking orders; and washing dishes. (Tr. 786-89.) Vander Meulen testified that she was no longer able to perform these duties because her health started to deteriorate. *Id.* If she tried to work more hours, she would have difficulty getting up the next day because of her arthritis. *Id.* In the past, Vander Meulen worked from 8:00 AM to 4:00 PM with a thirty minute break, but at the time of the hearing, she worked three-hours each day because her "body started getting bad and I couldn't do stuff anymore." (Tr. 781.)

When Vander Meulen was asked to identify her symptoms, she stated that she has had "pain in every joint more or less from my neck down to and including my feet." (Tr. 782.) At some point in the late 1990's she stopped working at Burger King, but resumed

2

her employment there on or about January 2, 2001. (Tr. 797.) Regarding her hands, Vander Meulen said, "when I first start cashiering its not too bad" and "it starts going down hill within probably within a half-hour". (Tr. 798.) She further provided that it was hard to open [coin] rolls. *Id.* When asked whether she helped with cleaning around the house, Vander Meulen stated, "I can push the vacuum cleaner if I need to . . . I can do some dishes . . . I clean my own area of the table where I eat and clean up a little but in the bathroom. I try to clean up as good as I can." (Tr. 803.)

On February 6, 2002, the ALJ issued a decision denying Vander Meulen's applications that the Appeals Council reviewed on her request. The Appeals Council vacated the decision and remanded the case citing the ALJ's failure to offer his rationale for not accepting the opinion of Dr. Christopher Evanich, a physician who performed consultive examinations of Vander Meulen, and for the ALJ's failure to conduct a function-by-function assessment of Vander Meulen's abilities to do work-related activities. The Appeals Council ordered the judge to give further consideration to Vander Meulen's maximum RFC and to obtain evidence from a vocational expert ("VE").

Vander Meulen filed another application on May 19, 2003, which was also denied initially and upon reconsideration. The ALJ conducted a remand hearing on June 10, 2004, at which time Vander Meulen appeared and testified. The May 2003 application was consolidated with the 1999 and 2000 applications by the ALJ. In a September 21, 2005, decision, the ALJ found that Vander Meulen was not disabled and again denied benefits. Vander Meulen requested review by the Appeals Council, which found that the ALJ committed an error of law by failing to provide sufficient rationale for the RFC calculation and by failing to obtain evidence from a VE. (Tr. 628-629.) Accordingly, on June 22, 2006,

3

the council vacated the decision, remanded the case for further proceedings, and reassigned the case to a different ALJ. *Id.*

On February 1, 2007, ALJ Robert G. White conducted a remand hearing. Vander Meulen appeared at the hearing with counsel and VE William S. Dingess testified. The ALJ reexamined Vander Meulen about her past work experience in the presence of the VE. Afterward, the VE determined that Vander Meulen was previously a "fast food worker" and that the job was light and unskilled. (Tr. 866.) The ALJ questioned the frequency in which such a worker is required to use her hands and the VE stated that the "work performed by a fast food worker, typically . . . would be more between frequent and constant." *Id.* Moreover, the ALJ asked the VE whether there are any light duty jobs in which the handling or fingering would be only occasional, and was told "none that I can think of off the top of my head." (Tr. 875.)

During the hearing, the ALJ acknowledged that there was likely a psychological component to Vander Meulen's condition stating: "my sense is, you know, this is more of a psychological as opposed to a psychiatric problem." (Tr. 861.) The ALJ and Vander Meulen's attorney agreed that a series of psychological examinations should be conducted. Accordingly, on March 13, 2007, Dr. Thomas Fisher performed a neuropsychological examination on Vander Meulen. He diagnosed Vander Meulen with narcissistic personality disorder.

The ALJ issued an unfavorable decision on July 13, 2007. Vander Meulen's request for review was denied by the Appeals Council, therefore the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481*; see Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

4

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this court's review is limited to determining whether the ALJ's decision is supported by "substantial evidence" and is based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).[1] The ALJ's findings of fact, when supported by substantial evidence, are conclusive. § 405(g). Substantial evidence is relevant evidence that a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

The court reviews the entire administrative record to determine if the Commissioner's decision is supported by the record. *Arkansas v. Oklahoma,* 503 U.S. 91, 113 (1992). However, the court does not "'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner.'" *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). But, if the ALJ commits an error of law, reversal is required without regard to the volume of evidence supporting the factual findings. *Id.* Failure to follow the Commissioner's regulations and rulings constitutes legal error. *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

An ALJ must "'minimally articulate his reasons for crediting or rejecting evidence of disability,'" *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992)), "build[ing] an accurate and logical bridge from the evidence to his conclusion," *id.* at 872. Although the ALJ need not discuss every piece of evidence, he or she cannot select and discuss only the evidence supporting the decision.

---

[1] The right to review of SSI claims falls under 42 U.S.C. § 1383(c), but the standard is the same as under § 405(g). *See* § 1383(c)(3).

5

*Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that examination. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). If the ALJ's decision lacks evidentiary support or is "so poorly articulated as to prevent meaningful review," the district court should remand the case. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (internal quotation marks omitted). A "sketchy opinion" may be sufficient if it is clear the ALJ considered the important evidence and the ALJ's reasoning can be traced. *Id.* at 787.

To obtain DIB and SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Administration has adopted a sequential five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine at step one whether the claimant is currently engaged in substantial gainful activity. If so, she is not disabled. If not, at step two the ALJ must determine whether the claimant has a severe physical or mental impairment. If not, the claimant is not disabled. If so, at step three the ALJ determines whether the claimant's impairments meet or equal one of the impairments listed in the Administration's regulations, 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"), as being so severe as to preclude substantial gainful activity. If so, the claimant is found disabled.

If the claimant is found not disabled, before step four the ALJ determines the claimant's RFC. 20 C.F.R. 404.1520(e). RFC is the most the claimant can do in a work
6

setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p; *Young*, 362 F.3d at 1000-01. The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. *Id*. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy. *Id*. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id*.

At step 4, the ALJ must consider whether the claimant can perform her past relevant work. If she can perform her past relevant work she is not disabled. However, if she cannot perform past work, then at step five the ALJ determines whether the claimant has the RFC, in conjunction with age, education, and work experience, to make the adjustment to other work. If the claimant can make the adjustment, she is found not disabled. If she cannot make the adjustment, she is found disabled. 20 C.F.R. 404.1520; *see Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

ANALYSIS

Vander Meulen asserts that ALJ White did not understand the procedural history of her case. ALJ Bartlet consolidated the relevant applications, and Vander Meulen alleges that the relevant onset date was in 1997, which was provided in her 1999 application. Accordingly, ALJ White stated that "the decision finds that the claimant has not been disabled at any time relevant to any period since 1997." (Tr. 26.) Later in his analysis, however, he referred to the onset date listed on the 2003 application stating: "after careful consideration of all the evidence, the undersigned Administrative Law Judge concludes

7

that the claimant has not been under a disability . . . from February 7, 2002 through the date of this decision." (Tr. 27.) The ALJ also determined that her "latest alleged onset date" was "February 2007." (Tr. 27.) He concluded by finding that Vander Meulen has not been under a disability from August 1, 1997, March 13, 2002, or from February 7, 2002, through the date of the decision. Although the ALJ referred to "the alleged onset date" throughout the decision, he failed to clarify which onset date he referred to. He also failed to provide a legal or factual analysis for utilizing any or all of the possible onset dates. His conflicting statements about the onset date create uncertainty as to the weight given to evidence, particularly the medical examinations occurring between the 1997 and 2002 onset dates. Inasmuch as there is more than one possible onset date, an explanation of the date used is necessary to build the requisite logical bridge from the evidence to the conclusion.

The ALJ's finding that Vander Meulen's income exceeded the monthly SGA amount was not supported by evidence in the record. The ALJ stated ". . . the claimant has performed work as a fast food worker in 2001 and into 2002 at a substantial gainful level . . ." (Tr. 29.) To be eligible for disability benefits, a person must be unable to engage in substantial gainful activity (SGA). The relevant monthly SGA amount was $740 in 2001, and in that year Vander Meulen earned less than $600 per month working at Burger King. (Tr. 240.) Similarly, she earned less than the relevant monthly SGA in 2002, which was $780. (Tr. 252, 264.) Despite this error, the ALJ considered medical records created prior to 2002, (Tr. 29.) but its not clear whether the weight of such medical evidence was affected by the ALJ's erroneous SGA finding. Thus, the RFC finding could not have been based on substantial evidence in the record in light of this error.

8

In making the RFC determination, ALJ White stated that although "the claimant also alleges degenerative changes to her wrists and hands . . . clinical findings have failed to reveal a significant medically determinable impairment . . . ." (Tr. 29.) The ALJ favored the findings of Dr. Murray and Dr. Salaam, and rejected Dr. Gramstad's findings, stating, "allegations of musculoskeletal pain . . . did not prevent her from performing the job as a fast food worker, regardless of Dr. Gramstad's assessment." (Tr. 33.)

Because the ALJ's RFC assessment conflicted with Dr. Gramstad's assessment, pursuant to SSR 96-8p, he was required to explain why the doctor's opinion was not adopted. After citing Dr. Gramstad's medical examinations, the ALJ stated:

> However, in 2001, the claimant was able to work as a fast food worker, which as the vocational expert testified, required nearly the constant use of both hands. Accordingly, absent clinical signs and findings, the undersigned does not find the claimant to have significant hand impairment, especially in light of the later, November 2002 examination report of Dr. Yassar Salaam, which found no limitation in hand use. Dr. Gramstad's various assessments are inconsistent, unfounded on significant objective findings, and appear to be his attempt to bend over backwards for the claimant.

(Tr. 29.)

In assessing RFC, "the adjudicator must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p. Here, the ALJ failed to indicate how the doctor's reports were inconsistent. To the extent that the ALJ inferred that Dr. Gramstad's March 1999 and October 2000 evaluations were inconsistent with Dr. Gramstad's September 1999 evaluation," this court finds that the ALJ failed to base his finding upon substantial evidence in the record.

The ALJ noted that Dr. Gramstad's March 1999 evaluation of Vander Meulen found limitations in her grasping, pushing and pulling. (Tr. 29.) However, the ALJ failed to note that Dr. Gramstad's September 1999 report indicated that Vander Meulen may

9

"occasionally" lift up to 24 pounds, whereas occasionally means 1-4 hours daily. (Tr. 349.) The ALJ stated that Dr. Gramstad's September 1999 evaluation indicated that Vander Meulen could lift up to twenty pounds. However, the ALJ failed to provide that Dr. Gramstad's October 2000 report indicated that Vander Meulen can "rarely" lift twenty pounds. (Tr. 353.) "Rarely means 1% to 5% of an 8-hour working day." (Tr. 353.) The ALJ found that, "in October 2000, [Dr. Gramstad] stated, without any significant clinical findings from his examination, that the claimant could not perform a full range of sedentary work with a 90% reduction in her hand use." (Tr. 29.)

The ALJ cited various parts of Dr. Gramstad's medical evaluations that, if read in isolation, may appear inconsistent. Yet, the record indicates that, between her 1999 and 2000 medical evaluations, Vander Meulen's ability to lift declined. If the ALJ found other inconsistencies, he should have included an explanation in his decision. Thus, the ALJ erred by selectively citing the record and he failed to build a logical bridge from Dr. Gramstad's various reports to his conclusion that the reports were inconsistent. While a "sketchy opinion" may be sufficient if the ALJ's reasoning can be traced, here, the reasoning is not clear. Moreover, the ALJ concluded that Dr. Gramstad appeared to attempt "to bend over backwards for the claimant" yet failed to cite to evidence in the record that supports this finding.

Vander Meulen argues that RFC is not based on substantial evidence because the ALJ did not properly consider the combination of her impairments. If an ALJ finds that one or more of a claimants' impairments are severe, he must consider the "aggregate effect of this entire constellation of ailments - including those impairments that in isolation are not severe." *Golembiewski v. Barhart*, 322 F.3d 912, 918 (7th Cir. 2003). Here, the ALJ found

10

that Vander Meulen's narcissistic personality disorder ("NPD") and the combination of mild degenerative changes to knees and lumbar spine were severe impairments. (Tr. 29.) He concluded that the "claimant has no physical or mental impairments, singly or in combination, that prevent her from working at the above-described [RFC]." ALJ White did not minimally articulate his reasons for rejecting the various medical opinions of doctors Evanich, Jankus, and Hall, which may support a finding that Vander Meulen was under a disability. Rather, ALJ White incorporated by reference, except where distinguished, discussions of the evidence contained in the two previously vacated decisions of ALJ Bartlet.

The ALJ relied on Vander Meulen's description of her daily activities as a basis of its RFC assessment. (Tr. 17.) He found, "the claimant stated she listens to music, watches television, sits outside, dusts her home and cleans her dishes. The claimant also noted that she will leave her home to shop for food and get the mail." (Tr. 31.) However, the Seventh Circuit Court of Appeals has held that there are critical differences between the activities of daily living and activities in a full-time job.

> [A] person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 11-2422, 2012 WL 280736 (7th Cir. Jan. 31, 2012). Consequently, the ALJ erred when it failed to note its consideration of these differences when making its RFC finding.

The ALJ stated, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to

11

produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 31.) This language has been identified as a template used by Administrate Law Judges. The Seventh Circuit Court of Appeals has admonished the use of these meaningless boilerplates, asserting the template yields no clue to what weight the trier of fact gave the testimony. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Despite the ALJ's use of this boilerplate, the court finds that he did not conduct an insufficient credibility analysis.

The ALJ assessed Vander Meulen's failure to properly take Dilantin, her seizure medication. (Tr. 31-32.) He pointed out that when Vander Meulen was seen in the emergency room for alleged seizures, testing indicated that her anticonvulsant blood levels fell below therapeutic levels. (Tr. 31.) The ALJ noted that Vander Meulen claimed she was "cutting back." (Tr. 31.) However, Vander Meulen indicated that she was cutting back because "she could not afford to continue to pay for it, so she would save it up and not take it every day." (Pl's brief 14; Tr. 475, 557-80; 719.) The ALJ cited to Dr. Murray's skepticism regarding Vander Meulen's excuses for failing to take her medication, rasing the issues that should could have sought financial assistance if she was destitute. (Tr. 32.) Moreover, when taken to the hospital in 2003, the paramedics reported that Vander Meulen seemed to have several months worth of medication. (Tr. 467) In addition, the ALJ observed Dr. Salam did not find Vander Meulen to be particularly compliant with range of motion testing. (Tr. 32.) Thus, because this court may not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner, it will defer to the findings of the ALJ regarding Vander Meulen's credibility.

12

This court finds no error with the ALJ's findings in regard to Vander Meulen's seizure disorder, as it is supported by substantial evidence on the record. Nevertheless, on remand, the ALJ is urged to consider additional evidence that Vander Meulen may offer regarding her seizure disorder. Because various doctors have found that Vander Meulen has a degenerative condition in her hands and wrists, the ALJ is urged to evaluate the current status of Vander Meulen's medical condition. Lastly, the ALJ shall assess the aggregate impact of the impairments. Hence, the ALJ shall reexamine Vander Meulen's credibility and consider the medical findings of all physicians, including, but not limited to Doctors Salam, Murray, Gramstad, Evanich, Fisher, Jankus, and Hall. Now, therefore,

IT IS ORDERED that the decision is reversed and the case is remanded for further proceedings.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE